NO. 7698. STATE OF LOUISIANA

MRS. WM VON DROZKOWSKY, ET AL
 COURT OF APPEAL
 VS

THOMAS J. KILBRIDE, ET AL. PARISH OF ORLEANS.
 --------------------------------

# O P I N I O N.
-------------------

St. Paul, Judge.

This is a petitory action. The property in controversy
belonged to the late John G. Seifer, who was married twice.
It was purchased just twenty days after his second marriage
for $1150, of which one half was paid in cash, and the other
half in one year.

Seifer had no children by his second wife, who died
before him (1887) and whose nearest of kin are shown to
be her mother, since deceased (1893), one sister, and the
children of a predeceased sister and brother.

But though Seifer had no right of usufruct on his
wife's share of the community (Succ. of Lee, 9 An 398),
yet he retained possession of this property until his death;
and thereby doubtless recouped the amount of the cash
payment thereon.

When Seifer died (1912) his two daughters by a former
marriage (his sole heirs) found in his possession the piece
of real estate involved in this controversy and another
also belonging to the second community.

These (and other properties) they partitioned in
kind between themselves. The property in controversy, then
appraised $2600, was taken by his daughter Mrs. Mixon; and the other,
then appraised $2000, by his daughter Mrs. Staiger. Each

281

warranted the title of the other.(1912)

In 1915, Mrs. Staiger purchased from the sister and other heirs of the second Mrs. Seifer, the plaintiffs here, their interest in the other property.

On July 1st 1914, Mrs. Mixon sold this property to Thomas J. and Anna M. Kilbride, the defendants here, with full warranty and with substitution to all claims arising out of previous warranties (if any).

The Kilbrides have called in warranty their own author Mrs. Mixon, now an absentee, and herein represented by a curator ad hoc; and have also called her author (for one half), viz, Mrs. Staiger now represented by her four children.

Neither the Succession of the second Mrs. Seifer, nor that of her mother, was ever formally opened, and hence their heirs have never been "recognized and put in possession by judgment of court"; nor have they ever been in actual (i. e. physical) possession of the property herein sued for.

I.

The defendants pleaded the prescription of ten years, which however is not insisted upon, and for which we see no basis whatsoever. They also set up an exception of "no cause of action", thereby challenging petitioners right to bring this suit; and as the foundation thereof, they now urge the ruling in Blum vs Allen, 145 La......

81 Southern 760, that "Heirs have no standing to sue for the recovery of the property inherited by them until they shall have been recognized by a judgment obtained contradictorily with the inheritance tax collector, putting them im possession and fixing the inheritance tax". Citing Act 109 of 1906; Succ. of Pavey, 124 La 525; Coreil's Estate, 127 La 702.

The only difference between that case and this is, that in the former the de cujus died <u>after</u> the act of 1906, whereas in this the de quorum, Mrs. Seifer and her mother, both died <u>before</u> it.

That act, passed for revenue purposes, effected however a radical change in the ancient laws of this state, and <u>ordinarily</u> would not be thought retroactive. For prior to the first inheritance tax law (1904) the maxim "le mort saisit le vif" prevailed in this state, and it was accepted law that the rights of heirs, i. e. the inheritance, vested at the moment of death; so that it might seem at first that to give that statute retroactive effect, offerred certain constitutional objections.

But in Succession of Levy, 115 La 377, our Supreme Court virtually rejected the doctrine of <u>saisin</u> of <u>right</u> as a pure fiction, and (in effect) adopted that of the Old Common Law, exemplified in the maxim "Non jus sed seisina facit stipitem" (Blackstone, Vol 2, p 209; Kent, Vol 4,

p 385-386); a doctrine discarded in England since the statute of 3 & 4 William IV, chapter 106, and long ago repudiated by every other state in the Union. 4th Kent 387.

So that the question of vested rights having _thus_ been disposed of, there appeared no longer any constitutional objection to giving the statute of 1904 a retroactive effect. Cahn vs Brewster, 203 U. S. 552 (The same case).

In Succession of Stauffer, 119 La 66, the same question arose once more; this time under the act of 1906. Again the Supreme Court rejected the doctrine "le mort raisit le vif," declared the statute retroactive, and denied any vested right in the heir unless and until actually, i. e. physically, in possession of the property.

As the act of 1906 is retroactive, it follows that the ruling in Blum vs Allen, supra, ought to prevail in this case.

But we do not think the act of 1906 _literally_ applicable to a purely contingent claim or mere right of action; for section 3 authorizes an heir, even before recognition, to do all such acts as may be "necessary to preserve the property from.......... LOSS." Otherwise the act would in effect quiet every spoliation; and the greater the spoliation the more certain the confirmation.

Nor do we think the ruling in Blum vs Allen, should be taken too strictly. All that the court meant was simply

that the heirs could not obtain possession of the estate
without paying the inheritance tax that might be due thereon;
for that was all the statute intended.

We think it would suffice for that purpose that the
inheritance tax collector be made a party to the suit, to
the end that the tax might be fixed in the very judgment
which gives the heir actual possession; and we think this
case may properly be remanded for that purpose.

The judgment appealed from is therefore reversed,
and the case is now remanded to the court a qua there to be
proceeded with in accordance with this opinion and according
to law; the costs of this appeal to be paid by plaintiffs,
and all other costs to await the final judgment.

New Orleans La, February 1920

285

7698

ON REHEARING.

7698

# OPINION.

St. Paul, Judge.

The facts of the case are stated in our first opinion; and there would then have been judgment in favor of plaintiffs had we not thought ourselves bound to follow herein the ruling in Blum vs Allen, 145 La.

But we had overlooked the ruling in Succeddion of Westfeldt, 122 La 836 (843), that the provisions of the Constitution touching liability for an inheritance tax, and the statutes carrying them into effect, do not reach back to conditions anterior to the Constitution itself, which looked only to the prseent and future and not to the past.

## I.

The nat revenues of the property from judicial demandd to March 5th 1919 were $219.10; and plaintiffs must also have judgment for one half thereof, with reservation of their right to claim one half the net revenues after that date.

## II.

The demand in warranty between the appellees cannot be entertained in this appeal (7 Orleans App 420; 9 Orleans App 299). Moreover they were not passed upon by the judgment appealed from.

Our former decree is therefore set aside and the judgment appealed from reversed; and it is now ordered that there be judgment in favor of plaintiffs recognizing them as joint

287

owners (in the proportions claimed by them) of one undivided half of the property in in controversy; and further judgment against the defendants Thomas J. and Anna M. Kilbride for the sum of $100.55 with legal interest from March 5th 1919, and with reservation of plaintiff's right to recover one half of the net revenues of said property from said date until delivery; and for their costs in both courts.

New Orleans La, April 19th, 1920